IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| VICTOR SERRATO,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, UNITED STATES DEPARTMENT OF HOMELAND SECURITY, and UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>Defendants. | 4:25-cv-00343-SHL-HCA<br><br><br>ORDER GRANTING MOTION TO DISMISS |

Petitioner Victor Serrato, an "illegal criminal alien" and state prisoner, brings this petition for a writ of mandamus. (ECF 1.) He asks the Court to order the United States Department of Justice ("DOJ"), Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE"), to immediately execute his federal detainer for removal and deport him to his native country of Mexico, consistent with Executive Order No. 14159. Defendants move to dismiss the petition. For the following reasons, the Court GRANTS Defendants' Motion to Dismiss (ECF 3) and Petitioner's Motion for Leave to Proceed in forma pauperis (ECF 2) and DENIES the Petition for Writ of Mandamus (ECF 1).

I.    **BACKGROUND**.

Petitioner alleges that he is a national of Mexico who came to the United States illegally in 2001. (ECF 1, p. 1.) In November 2006, he was charged with first-degree murder and nonconsensual termination of a human pregnancy. *See State v. Serrato*, 787 N.W.2d 462, 464–65 (Iowa 2010). He was convicted by a jury and sentenced to life imprisonment. *See id.* He remains incarcerated at Anamosa State Penitentiary. *See* https://doc-search.iowa.gov/offender/detail?offenderNumber=6620633 (last visited December 18, 2025). Petitioner claims that upon intake

with the Iowa Department of Corrections, ICE agents visited him and he signed voluntary deportation documents. (ECF 1, p. 1.) These documents have not been made part of the record.[1]

On September 15, 2025, Petitioner filed a "Petition for Writ of Mandamus." (ECF 1.) He asks the Court to order Defendants to immediately execute his "Federal Detainer" and remove him to Mexico in accordance with Executive Order 14159, "Protecting the American People Against Invasion," 90 Fed. Reg. 8443, signed by President Donald Trump on January 20, 2025. Petitioner identifies the "All Writs Clause," Clause 1 of Section 2 of Article 3 of the U.S. Constitution, and 28 U.S.C. § 1361 as authority for the Court to compel this action. (Id.) Defendants move to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a cause of action under Fed. R. Civ. P. 12(b)(6). (ECF 3.) Petitioner resists. (ECF 8.)

## II.    DISCUSSION.

The Court cannot grant Petitioner the relief he seeks. As an initial matter, the doctrine of sovereign immunity renders the United States immune from suit unless it consents to be sued. Clause 1 of Section 2 of Article 3 of the U.S. Constitution "does not authorize the maintenance of suits against the United States" due to the doctrine of sovereign immunity. *Monaco v. Mississippi*, 292 U.S. 313, 321 (1934). "It is well settled that the mandamus statute, 28 U.S.C. § 1361, does not provide a waiver of sovereign immunity." *In re Russell*, 155 F.3d 1012, 1012 (8th Cir. 1998). Moreover, "no federal official are named as defendants . . . . [and] [t]he Mandamus Act does not apply to the United States itself." *Murray v. United States*, 686 F.2d 1320, 1326 (8th Cir. 1982). Petitioner's claim under section 1361 therefore must be dismissed for lack of subject matter jurisdiction. *See Dillon v. United States,* 620 F. Supp. 3d 856, 859 (D. Minn. 2022) ("Because the mandamus statute does not waive the United States' sovereign immunity, [petitioner's] claim [against the United States] under the statute must be dismissed for lack of subject-matter jurisdiction.").

Further, the All Writs Act, § 28 U.S.C. 1651(a), "is not an independent source of subject matter jurisdiction." *McKenzie County v. United States*, 131 F.4th 877, 887 (8th Cir. 2025) (quoting *Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 821 (8th Cir. 2009)), *cert. denied sub nom. McKenzie County v. United States*, No. 24-1296, 2025 WL 3131810 (U.S. Nov. 10, 2025). "[T]he All Writs Act is not a mechanism for 'circumvent[ing] statutory

---

[1] A search of the ICE Online Detainee Locator System using the A-number listed in Petitioner's filing did not yield any results. *See* https://locator.ice.gov/odls/#/results (last visited December 18, 2025).

requirements or otherwise binding procedural rules. . . . [and] cannot provide relief '[w]here a statute specifically addresses the particular issue at hand.'" *Id.* (quoting *Shoop v. Twyford*, 596 U.S. 811, 820 (2022) and *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002)).

If the Court had subject matter jurisdiction, Petitioner's claim would fail on the merits. Federal law dictates that Petitioner remain in custody until he has served his state court sentence, as no illegal alien awaiting deportation has a right to compel the government to have him removed prior to execution of his sentence. *See Richards v. Holder,* No. 10-CV-4128, 2011 WL 1326048, at *2 (D. Minn. Feb. 4, 2011) ("There is no federal statutory or constitutional basis for Petitioner's claim that he must be removed from the United States before the execution of his state sentence."), *report and recommendation adopted,* No. CIV. 10-4128, 2011 WL 1302263 (D. Minn. Apr. 6, 2011). The applicable law concerning the deportation of illegal aliens is 8 U.S.C. § 1231(a)(4), which states that "the Attorney General may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment." § 1231(a)(4)(A). There are statutory exceptions for nonviolent offenders, *see* § 1231(a)(4)(B), but they are inapplicable here, where Petitioner is serving a life sentence for first-degree murder.

Further, Petitioner has no private right of action under section 1231, which states, in relevant part: "No cause or claim may be asserted under this paragraph against any official of the United States or of any State to compel the release, removal, or consideration for release or removal of any alien." § 1231(a)(4)(D). "[C]ourts have uniformly held that no alien has an individual right to compel the Attorney General or the INS to deport him." *Degollado v. United States,* No. 4:08-CV-997, 2008 WL 2783240, at *2 (E.D. Mo. July 16, 2008) (collecting cases).

Nothing in the Executive Order changes this result. The Executive Order provides that "[i]t is the policy of the United States to faithfully execute the immigration laws against all inadmissible and removable aliens, particularly those aliens who threaten the safety or security of the American people…. [and] to achieve the total and efficient enforcement of those laws, including through lawful incentives and detention capabilities." Exec. Order No. 14159, 90 Fed. Reg. 8443, § 2 (Jan. 20, 2025). It instructs federal agencies and others to take certain action to effectuate this policy.[2]

---

[2] For example, the Executive Order instructs the Attorney General to "prioritize the prosecution of criminal offenses" related to unlawful entry or continued presence; calls for the establishment of Homeland Security Task Forces to target transnational criminal activity; requires the identification of unregistered illegal aliens; and promotes the authorization of state and local law enforcement officials to perform the functions of immigration officers. Exec. Order No. 14159, §§ 5, 6, 7, 11.

Among other things, the Executive Order directs DHS to use provisions of federal law "to ensure the efficient and expedited removal of aliens from the United States." *Id.*, § 9. It specifically references two provisions of law: (a) 8 U.S.C. § 1228, which provides for expedited removal of aliens convicted of committing aggravated felonies "in a manner which assures expeditious removal following the end of the alien's incarceration for the underlying sentence" but states that "[n]othing in this section shall be construed as requiring the Attorney General to effect the removal of any alien sentenced to actual incarceration, before release from the penitentiary or correctional institution where such alien is confined"; and (b) § 1229a(d), relating to stipulated removal orders.

The Executive Order also encourages aliens to voluntarily depart, but self-deportation is not an option for aliens serving sentences for aggravated felonies. §§ 1229c, 1227(a)(2)(A)(iii)). The Executive Order does not purport to amend any of relevant provisions of the United States Code (nor would the Executive Branch have unilateral authority to do so anyway), nor does it otherwise instruct federal officials to deport aliens prior to completion of their state sentences. Moreover, the Executive Order states that it "is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person." Exec. Order No. 14159, § 23(c). Petitioner therefore cannot compel Defendants to deport him immediately by virtue of the Executive Order.

**III.    CONCLUSION**.

For the reasons stated above,

**IT IS ORDERED** that Defendants' Motion to Dismiss (ECF 3) and Petitioner's Motion for Leave to Proceed in forma pauperis (ECF 2) are **GRANTED**. The Petition for Writ of Mandamus (ECF 1) is **DENIED**. The Clerk of Court is directed to enter judgment for Defendants.

DATED this 18th day of December, 2025.

_____
STEPHEN H. LOCHER
District Judge

4